IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JULY 1997 SESSION

FILED

September 30, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9607-CR-00312 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. SETH NORMAN, |
| JAMES EDWARD GATES, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Especially aggravated robbery) |


FOR THE APPELLANT:

KARL DEAN
Public Defender

JEFFERY DeVASHER
Asst. Public Defender
1202 Stahlman Bldg.
Nashville, TN 37201
   (On Appeal)

WENDY S. TUCKER
    -and-
JOAN A. LAWSON
Asst. Public Defenders
12th Floor Stahlman Bldg.
Nashville, TN 37201
   (At Trial)

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

PETER M. COUGHLAN
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

KYMBERLY HAAS
Asst. District Attorney General
Washington Square Bldg., Suite 500
222 Second Ave., North
Nashville, TN 37201


OPINION FILED:_____


AFFIRMED


JOHN H. PEAY,
Judge

## O P I N I O N

The defendant was indicted in February 1995 for especially aggravated robbery. A jury convicted him of this offense and after a hearing, he was sentenced to nineteen years in the Tennessee Department of Correction. In this appeal as of right, the defendant raises the following issues:

> 1. Whether the trial court erred in denying the defendant's motion to suppress statements made by the defendant to police officers.
>
> 2. Whether the trial court erred in refusing to grant a mistrial after the State allowed the jury to hear a portion of the defendant's tape recorded statement that should have been redacted.
>
> 3. Whether the trial court erred in denying the defendant's request for a special jury instruction regarding the applicable range of punishment and further erred in instructing the jury on the number of years the defendant would have to serve before becoming eligible for parole.

After a review of the record and applicable law, we find that these issues are without merit. Thus, we affirm the judgment of the court below.

The facts of the case are as follows. On September 2, 1994, Anne Deol, of 1220 Second Avenue South in Nashville, returned to her home shortly after 9:00 p.m. She drove into her driveway and parked her car near the steps to her back porch. When she stepped onto the second step, she heard voices under the stairs. Suddenly, a young man ran around the stairs, grabbed her purse, and fled through the back yard. While Ms. Deol stood watching the young man run away, she was shot in the back. She managed to find her way into her home and called 911. Officers and emergency personnel arrived shortly thereafter.

At the defendant's trial, Ms. Deol, who was seventy-three years old at the time of the robbery, testified that her back porch lights had not been illuminated and,

2

therefore, she was unable to identify her attackers. She testified that she did see three black males but that she could identify none of them.

Shortly after the robbery, Detective Ricky Rolls of the Metropolitan Police Department, received a call from a woman named Sherry Reed. Ms. Reed told Rolls that she had discovered a gun in the room of a young man, Leslie Jones, who was staying at her house. Rolls picked up the gun and passed it along to Detective Dan Whitehurst who was investigating the robbery of Ms. Deol. With the discovery of the gun and other information, Whitehurst then formed a list of three possible suspects: the defendant, Dwjuan "Juaney" Bradford, and James "J.T." Jordan.

On September 14, 1994, Whitehurst went to see the defendant's mother at her place of employment. The defendant's mother agreed to take Whitehurst to her home to talk to her son. When Whitehurst and a fellow detective arrived at the home, Bradford and the defendant were present. The defendant, in the presence of his mother, gave the officers a tape recorded statement in which he admitted to his role in the robbery. The defendant had not been read his <u>Miranda</u> rights prior to giving the statement. After the defendant gave his statement, the detectives left.

The following day, the defendant called Whitehurst and said that he and the other two suspects, Bradford and Jordan, were at the defendant's house waiting to be picked up by the police. Whitehurst returned to the defendant's home and arrested all three young men. The defendant was taken to the police department and was read his <u>Miranda</u> rights. He then gave a statement on video tape that was similar in sum and substance to the earlier statement.

In his first issue, the defendant argues that the trial court erred by refusing

3

to grant his motion to suppress both statements made to Detective Whitehurst. At the hearing on the motion to suppress, Whitehurst testified that the defendant had been a suspect at the time the first statement was taken. He further testified that he had not gone to the defendant's home with the intention of arresting him because he did not yet have enough evidence. He said that he had interviewed the defendant with the hopes of building a stronger case. Whitehurst stated that he did not display handcuffs or weapons and that the defendant was never threatened. He testified that the defendant had been free to leave at any point.

The tape recording of the defendant's statement reflects that Whitehurst told the defendant that he knew who had robbed Ms. Deol and that he had known for weeks. To this the defendant responded, "So I can go to juvenile right now?" Whitehurst told him that he could and that in fact, all three young men were going to juvenile. Whitehurst told the defendant, "Juaney [Bradford] is gonna go tonight. . . . Yes, trust me. Everybody gets to go." At this point, the defendant told Whitehurst to handcuff him. Whitehurst refused, saying he just wanted the defendant to tell him the truth. The defendant then confessed to being the one that shot Ms. Deol.

After he confessed, the defendant was asked if he wanted to talk to Bradford, who was waiting outside the house. The defendant agreed and told Whitehurst, "I ain't gonna run. I [have] no shoes." Whitehurst replied, "I don't think you're gonna run." At that point, Whitehurst stepped away so that the defendant and Bradford could speak confidentially. Whitehurst left shortly thereafter without making any arrests.

The defendant contends that the above statement should have been suppressed because the statement was made during a custodial interrogation and the defendant had not been advised of his Miranda rights. "Custodial interrogation" has been

4

defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966).

The Tennessee Supreme Court recently addressed this issue in its opinion State v. Anderson, 937 S.W.2d 851 (Tenn. 1996). In Anderson, the court stated that

> in determining whether an individual is 'in custody' and entitled to Miranda warnings, the relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest. The test is objective from the viewpoint of the suspect, and the unarticulated, subjective view of law enforcement officials that the individual being questioned is or is not a suspect does not bear upon the question.

Anderson, 937 S.W.2d at 852.

The court also listed some factors which may be relevant to the totality of the circumstances inquiry. They include:

> the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Anderson, 937 S.W.2d at 855 (citations omitted).

In his order denying the motion to suppress, the trial judge found no indication of custodial interrogation. He noted that the defendant was questioned at his home with his mother present and that there had been no proof that the defendant was

5

not free to leave or that he had ever felt uncomfortable. This Court is bound by the trial court's determination that the defendant was not in custody at the time of questioning unless it "clearly appear[s] that there ha[s] been an abuse of discretion and a violation of the rights of the accused." Childs v. State, 584 S.W.2d 783, 788 (Tenn.1979); State v. Furlough, 797 S.W.2d 631, 639 (Tenn.Crim.App.1990); State v. Nakdimen, 735 S.W.2d 799, 802 (Tenn.Crim.App.1987).

In applying the Anderson factors to the case now before us, we find that the trial judge did not abuse his discretion in determining that the defendant was not in custody. The defendant was questioned in his home around nine in the evening. The officers entered the home with the defendant's mother's permission. The interview lasted approximately ten minutes and was non-controversial in nature. The officer's tone of voice was that expected in a normal conversation. He was not harsh in speaking to the defendant. Detective Whitehurst was accompanied by one other detective, and they arrived at the defendant's home in plain clothes and in an unmarked car. Obviously, the defendant was not transported anywhere for questioning; he was at home when the officers arrived. Next, the defendant was in no way limited in movement. Whitehurst testified that no handcuffs or weapons had been displayed. He further testified that no threats had been made to the defendant.

Whitehurst testified that he had confronted the defendant with evidence of the defendant's guilt by telling the defendant that he knew the defendant had committed the crime. However, when the defendant said, "Handcuff me now," Whitehurst refused, telling the defendant that he was not his enemy. Whitehurst did not specifically tell the defendant that he was free to leave the room or free to refuse to answer any questions. Nor did Whitehurst specifically tell the defendant that he was not under arrest. Near the end of the interview, the other detective suggested that the defendant speak to one of the

6

other suspects, Bradford, who was waiting outside. At that point, the defendant agreed to speak to Bradford and told the officers that he "ain't gonna run." Whitehurst responded that he had not thought the defendant would run. The detectives then left the defendant's home without making any arrests.

Thus, under these circumstances, we find that the trial court reached the correct conclusion. A reasonable person in this defendant's situation would not have thought he was in custody. The defendant was at his home, with his mother, and had not been restrained or threatened in any way. Furthermore, the detectives told the defendant they would not handcuff him. The detectives also told the defendant that they had already spoken to Bradford and Jordan, and the defendant was aware that those two had not been arrested. The defendant's statement was properly admitted as evidence.

Having made this determination, the defendant's contention that his second statement was inadmissible because it was "tainted" by the alleged ill-obtained first statement is without merit. The defendant gave his second statement to the police after he was arrested and read his Miranda rights. As the first statement was admissible, it could in no way "taint" the second statement. Both statements were properly admitted.

As his second issue, the defendant contends that the trial court erred when it refused to grant the defendant's motion for a mistrial after the jury heard a portion of the defendant's taped statement that the State had previously agreed to redact. At trial, the State told the court it planned to play the audio tape of the statement the defendant had made at his house to Detective Whitehurst. One of the prosecutors explained to the court that it had been agreed that a portion of the tape would not be played because it was irrelevant to the issues before the court. The prosecutor informed the court that she would have to stop and start the tape herself but that she had "done the counter thing."

7

However, at trial, the portion that was to be omitted was played for the jury. The defendant immediately objected and asked for a mistrial. The prosecutor explained that she had pushed the stop button on the recorder but that it did not stop.

What the jury heard was a question from Detective Whitehurst to the defendant while at the defendant's house. Whitehurst asked the defendant, "Juaney [Bradford] has got you in trouble before, ain't he?" The volume on the recorder was turned down immediately after this so that the jury only heard this question and not the defendant's reply. The trial court denied the defendant's motion for a mistrial stating that "'in trouble' doesn't mean anything significant. There's nothing about any kind of conviction or anything of that nature. It just is 'in trouble' which could mean at school or anywhere else."

Whether to grant a mistrial is a decision within the sound discretion of the trial judge, and absent an abuse of that discretion, such action will not be disturbed on appeal. State v. Hall, 667 S.W.2d 507, 510 (Tenn.Crim.App.1983). Generally, a mistrial will be declared in a criminal case only when there is a "manifest necessity" requiring such action by the trial judge. Arnold v. State, 563 S.W.2d 792, 794 (Tenn.Crim.App.1977).

In this case, we cannot conclude that the jury's hearing Whitehurst's question was a "manifest necessity" requiring a mistrial. We find that the trial judge did not abuse his discretion in refusing to grant a mistrial. However, we note that in the future, the better practice would be to actually have the tape redacted rather than relying on a tape counter and a possibly malfunctioning tape recorder.

As his final issue, the defendant contends that the trial court erred when it

denied his request for a special jury instruction concerning the applicable range of punishment and further erred when it instructed the jury on the minimum number of years the defendant would serve before becoming eligible for parole. Prior to trial, the defendant requested, as is provided for under T.C.A. § 40-35-201(b)(1), that the jury be instructed on the possible penalties for the offense charged and all lesser included offenses. The defendant requested that the jury be told that having been charged with a Class A felony, the defendant, if convicted, could receive a sentence of not less than fifteen years and not more than sixty years. See T.C.A. § 40-35-111(b)(1). The defendant also requested that the jury not be instructed as to the defendant's possible parole eligibility. The trial judge denied the defendant's request and informed the jury that if convicted, the defendant would receive a sentence between fifteen and twenty-five years as a Range I standard offender. See T.C.A. § 40-35-112(a)(1). He also informed the jury about the defendant's eligibility for parole as provided in T.C.A. § 40-35-201(b)(2)(A). The defendant now contends that the trial judge erred by not granting his request for the special instructions to the jury. We find no merit to this contention as the trial court was simply following the mandate of the statute. Tennessee Code Annotated § 40-35-201(b) provides:

> (b)(1) In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses.

> (2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison

9

overcrowding pursuant to title 41, chapter 1, part 5, if applicable. (emphasis added).

The trial court did not err in refusing to instruct the jury as the defendant had requested. The trial court followed the statute as to how to instruct the jury on possible punishment for the defendant. Therefore, we find no merit to this argument.

The defendant next contends that T.C.A. § 40-35-201(b) is unconstitutional. He specifically claims that the statute is unconstitutionally vague, is violative of due process, and is an unconstitutional attempt by the legislature to exercise judicial power. This Court recently addressed these very issues in State v. Howard E. King, No. 02C01-9601-CR-00032, Shelby County (Tenn. Crim. App. filed Oct. 22, 1996, at Jackson)(perm. to app. granted March 10, 1997). In finding the statute constitutional, this Court determined that the statute is not impermissibly vague, that none of the defendant's constitutional rights was violated, and that the statute is not a legislative attempt to exercise judicial power. This Court also rejected the defendant's reliance on Farris v. State, 535 S.W.2d 608 (Tenn. 1976) for the proposition that the statute is unconstitutional. As the Court's analysis in King is quite comprehensive, we find it unnecessary to again explain the reasoning behind these conclusions. Thus, we find no merit to the defendant's challenge that T.C.A. § 40-35-201(b) is unconstitutional.

For the foregoing reasons, we find no merit to the defendant's appeal and affirm the judgment of the court below.

_____
JOHN H. PEAY, Judge

CONCUR:

10

_____
WILLIAM M. BARKER, Judge


_____
JERRY L. SMITH, Judge